## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CRIMINAL NO. 2008-0020 |
| v. | ) | |
| | ) | |
| AMON THOMAS, NATHANIEL | ) | |
| THOMAS, OKIMO MELIGAN, and | ) | |
| ANDREA SOTO | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## <u>MEMORANDUM OPINION</u>

FINCH, SENIOR JUDGE

     THIS MATTER comes before the Court on Defendants' Motion to Suppress filed on December 29, 2008.  An evidentiary hearing was held on January 26, 2009.  After careful consideration and upon review of the briefs submitted by the parties, the Court issues the following ruling.

## I.   FACTUAL BACKGROUND

     On May 12, 2008, at approximately 8:10 a.m., Virgin Islands Police Department ("VIPD") Officer Samuel Abraham heard over the police radio that numerous shots had been fired in the vicinity of Catherine's Rest, St. Croix.  Moments later, VIPD Central Control reported the discharging of shots in the vicinity of Thomas Malloy Tire Shop in Catherine's Rest. <u>See</u> Supplement VIPD Report dated May 12, 2008.  VIPD Officer Heyliger was in the area of Catherine's Rest at that time when a silver colored vehicle passed him at a high rate of speed traveling south toward the South Shore Road. <u>See id</u>.  Shortly thereafter, VIPD Sgt. Gumbs, who

was also in the area, advised VIPD Central Control that he saw the silver colored vehicle turn

into a road adjacent to the Octagon House in Catherine's Rest (No. 6-B Catherine's Rest).

Sgt. Gumbs, Cpl. Abraham, and Officer Heyliger then drove to the Octagon House and

proceeded down the road on which the silver colored vehicle was seen turning. At

approximately 8:17 a.m., the officers encountered a red Mitsubishi Mirage exiting the road

leading from Defendant Amon Thomas' house. The red Mitsubishi Mirage was driving very

slowly. As the vehicle passed Cpl. Abraham's police cruiser, he noticed that someone was lying

down in the back seat of the vehicle. The police stopped the red Mitsubishi Mirage and ordered

the occupants to exit the vehicle. The driver, Okimo Meligan, followed the orders but the

backseat passenger, Amon Thomas, indicated that he could not exit the vehicle by waiving his

hands. Amon Thomas had a puncture wound to his lower left abdomen.

Shortly after Amon Thomas and Meligan were stopped and arrested, between 8:17 a.m.

and 8:25 a.m., Cpl. Abraham, Sgt. Gumbs, Officer Roger Roberts, and Special Agent Jim

Semrick saw Defendant Nathaniel Thomas running from behind the residence from which the

red Mitsubishi Mirage was seen leaving. They identified themselves as police officers, drew

their weapons, and ordered Nathaniel Thomas to get on the ground. After securing Nathaniel

Thomas, the officers proceeded to the back of the house to see whether anyone else was in the

area. The silver colored vehicle, which was previously seen driving at a high speed away from

the area where gun shots were heard, was parked in back of the residence. In addition, a pickup

truck was parked to the side of the house. Numerous marijuana plants were seen growing behind

and beside the house. At approximately 8:25 a.m., Nathaniel Thomas and Meligan were

transported to the Ancilmo D. Marshall Command Police Station and Amon Thomas was

transported to the Governor Juan F. Luis Hospital. <u>See</u> Supplement VIPD Report dated May 12, 2008.

With their weapons drawn, Sgt. Gumbs and FBI Agent Dennis Kinney proceeded to the residence at 6-6 Catherine's Rest and knocked on the door. Defendant Andrea Soto came to the door and Sgt. Gumbs asked her if anyone else was in the house. Soto responded: "There is no one else is in the house except me and my baby. You all could check." <u>See</u> Testimony of Sgt. Gumbs at Suppression Hearing, January 26, 2009. Sgt. Gumbs and Agent Kinney searched the house to make sure nobody else was inside. Only Soto's baby was inside the house. The officers did not see any incriminating evidence and nothing was seized from the house at this time.

While Sgt. Gumbs and Agent Kinney were inside the residence, additional police officers arrived on the scene. Sgt. Chris Howell called Superior Court Judge Francis D'Eramo and applied for a telephonic search warrant. At approximately 9:45 a.m., Judge D'Eramo issued the telephonic search warrant, which permitted officers to search three structures located at 6-6 Catherine's Rest, including the house, a white trailer, and an unpainted wooden structure. <u>See</u> Telephonic Search Warrant dated May 12, 2008. In addition, the telephonic search warrant permitted officers to search three vehicles located on the property. <u>See id</u>.

Upon receiving the telephonic search warrant, a thorough search of the structures and vehicles was performed by the officers on the scene. In addition, the area around the residence was searched, including the overgrown "bush" area behind the house as well as the adjacent property on the northern side of 6-6 Catherine's Rest. <u>See</u> Supplement VIPD Report dated May 12, 2008. During the search, the police recovered three firearms, ammunition, two speed loaders, a gun case, gloves, a ski mask, other miscellaneous clothing, growing marijuana plants

and dried marijuana plants.  The items were photographed and collected by a Forensics Officer

for safekeeping and further processing.  See Supplement VIPD Report dated May 12, 2008

## II.     STOP OF THE VEHICLE OCCUPIED BY DEFENDANTS AMON THOMAS AND OKIMO MELIGAN

Defendants Amon Thomas and Okimo Meligan argue that the stop of the red Mitsubishi

Mirage on May 12, 2008 occurred in violation of their rights under the Fourth Amendment.

Def.'s Mot. to Suppress at 2.  Defendants submit that the stop was without reasonable suspicion

or any other legal justification.  Id.

### A.  Standard of Review

The Fourth Amendment protects citizens "against unreasonable searches and seizures."

U.S. Const., amend. IV. 2  "What is reasonable depends upon all of the circumstances

surrounding the search or seizure and the nature of the search or seizure itself."  United States v.

Montoya de Hernandez, 473 U.S. 531, 537 (1985).  There is a presumptive requirement that

searches or seizures be carried out pursuant to a warrant. See Katz v. United States, 389 U.S.

347, 357 (1967)  ("[S]earches conducted outside the judicial process, without prior approval by

judge or magistrate, are per se unreasonable under the Fourth Amendment -- subject only to a

few specifically established and well-delineated exceptions.").  Evidence obtained during the

course of an unreasonable search and seizure can be suppressed and not admitted at trial.  See

Wong Sun v. United States, 371 U.S. 471, 485-86 (1963) (exclusionary rule requires suppression

of any evidence which is either the direct or indirect product of illegal police conduct).

In some instances, warrantless searches or seizures will be considered reasonable if based

on probable cause.  See Hill v. California, 401 U.S. 797, 804 (1971) ("[S]ufficient probability,

not certainty, is the touchstone of reasonableness under the Fourth Amendment").  For example, police officers may lawfully arrest a suspect without a warrant if the officer has probable cause to believe the suspect has committed a felony and the arrest does not occur in the suspect's home.  See Maryland v. Pringle, 540 U.S. 366, 373-74 (2003)  (upholding warrant-less arrest where police had probable cause to believe defendant had committed a felony after they found cocaine within his reach);  Michigan v. Royer, 452 U.S. 692, 700 (1981) (Every arrest is unreasonable unless supported by probable cause).

Probable cause exists whenever reasonably trustworthy information or circumstances within an arresting officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed by the person being arrested.  Draper v. United States, 358 U.S. 307, 313 (1999); United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002); United States v. Laville, 480 F.3d 187, 194 (3d Cir. 2007).  While "probable cause to arrest requires more than mere suspicion…it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt."  Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995).

Even in the absence of probable cause, an officer may "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)).  Accordingly, an officer may stop a mobile vehicle to investigate a reasonable and articulable suspicion that its occupants were involved in criminal activity.  United States v. Cuevas-Reyes, 2008 U.S. Dist. LEXIS 14523 at *6-7 (D.V.I. 2008) (citing Ornelas v. United States, 517 U.S. 690, 693 (1996) and United States v. Hensley, 469 U.S. 221, 226-27 (1985)).

5

Reasonable suspicion has been described as "a particularized and objective basis for suspecting the person stopped of criminal activity." Cuevas-Reyes, 2008 U.S. Dist. LEXIS 14523 at *7 (citing Ornelas, 517 U.S. at 695). The totality of the circumstances of each case are considered by the courts to determine whether reasonable suspicion exists. United States v. Arvizu, 534 U.S. 266, 273-74 (2002). Police officers may use their own experience and training "to make inferences . . . and deductions about the cumulative information available to them that might well elude an untrained person." Cuevas-Reyes, 2008 U.S. Dist. LEXIS 14523 at *7 (quoting Arvizu, 534 U.S. at 273-74). However, reasonable suspicion may not be based on an officer's hunch alone. Cuevas-Reyes, 2008 U.S. Dist. LEXIS 14523 at *7. The likelihood of criminal activity required for reasonable suspicion need not rise to the level required for probable cause. Id.; Arvizu, 534 U.S. at 273-74.

Reasonable suspicion and probable cause are determined with reference to the facts and circumstances within the officer's knowledge at the time of the investigative stop or arrest. Devenpeck v. Alford, 543 U.S. 146, 152 (2004); Florida v. J.L., 529 U.S. 266, 271, (2000); Laville, 480 F.3d. at 194. The validity of an investigative stop or arrest does not depend on whether the suspect actually committed a crime. See Gerstein v. Pugh, 420 U.S. 103, 119-123 (1975); see also Arvizu, 534 U.S. at 277 ("[a] determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct"). The appropriate inquiry, rather, is whether the facts and circumstances within the officer's knowledge at the time of an investigative stop or arrest objectively justify that action. Devenpeck, 543 U.S. at 153; Pringle, 540 U.S. at 371; Whren v. United States, 517 U.S. 806, 813, (1996).

"Courts must never lose sight of the fundamental principle that 'reasonable suspicion and probable cause…are commonsense, nontechnical conceptions that deal with the factual and

practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'"  Laville, 480 F.3d. at 196 (quoting Ornelas, 517 U.S. at 695 and Illinois v. Gates, 462 U.S. 213, 231 (1983)).  The Third Circuit has held that district courts "must apply a common sense approach, based on the totality of the circumstances" to determine whether there is reasonable suspicion or probable cause.  See Paff v. Kaltenbach, 204 F.3d 425, 436 (3d Cir. 2000); Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997).

### B.  Discussion

Considering the facts of this case together with all reasonable inferences, the Court finds that by the time Amon Thomas and Meligan approached the police officers in the Catherine's Rest area, the officers had, at the very least, reasonable suspicion to believe that criminal activity was taking place.  See Terry, 392 U.S. at 27; Laville, 480 F.3d. at 195.  The officers were aware that numerous gun shots were fired in the Catherine's Rest area and, soon after the shots were fired, a silver colored vehicle traveling at a high rate of speed was seen turning onto the same roadway from which Defendants' red Mitsubishi Mirage was exiting.

Before the officers stopped Amon Thomas and Meligan on the roadway leading to 6-6 Catherine's Rest, Cpl. Abraham saw Amon Thomas laying down in the back seat of the red vehicle.  See Testimony of Cpl. Abraham at Suppression Hearing, January 26, 2009.  Cpl. Abraham reasonably believed that Amon Thomas was attempting to evade police detection by hiding in the back of the red vehicle.  These circumstances gave rise to a reasonable suspicion and the officers were justified in performing an investigative stop of Amon Thomas and Meligan.  See United States v. Sharpe, 470 U.S. 675, 682 n.3 (1985); see also Arvizu, 534 U.S. at 274 (explaining that degree of certainty required to establish reasonable suspicion is less than

that required for probable cause); <u>Maryland v. Wilson</u>, 519 U.S. 408, 414 (1997) (holding that

officers could not only stop passengers but order them out of the vehicle during a lawful stop

without violating their Fourth Amendment rights).  Because there was objectively reasonable

suspicion based on articulable facts, the Court finds that the officers' stop of Amon Thomas and

Meligan was legally justified and did not violate Defendants' Fourth Amendment rights.  <u>See</u>

<u>Michigan v. DeFillippo</u>, 443 U.S. 31, 35 (1979).

### III. STOP OF DEFENDANT NATHANIEL THOMAS

Upon stopping the Red Mitsubishi Mirage, the officers saw that Amon Thomas had a

puncture wound to his lower left abdomen which was bleeding profusely.  The officers

reasonably believed that Defendant Amon Thomas had been shot.  Shortly thereafter, police

officers saw Defendant Nathaniel Thomas running from behind the property at 6-6 Catherine's

Rest.  As a general rule, it is not unlawful for officers outside the curtilage to observe what

occurs thereon. <u>United States v. Chun Yen Chiu</u>, 857 F. Supp. 353, 359 (D.N.J. 1993); <u>see</u>

<u>Ramsey v. United States</u>, 278 F.2d 368, 369 (6th Cir. 1960).  The Court finds that the police

officers had reasonable suspicion to detain Defendant Nathaniel Thomas at this time, considering

the facts that the officers were in the area investigating a recent shooting and the red Mitsubishi

Mirage, which held an individual who had recently been shot, was stopped moments before,

leaving the property.

### IV. SEARCH OF THE YARD AROUND THE RESIDENCE

Upon detaining Defendant Nathaniel Thomas, police officers proceeded to the back of

the residence to make sure nobody else was in the area.  At this time, the officers were on the

property located at 6-6 Catherine's Rest based on reasonable suspicion and the Court finds that,

under the circumstances, the officers were not required to leave the area and secure a warrant before looking around the house in an effort to secure their safety.  See United States v. Singer, 687 F.2d 1135, 1144 (8th Cir. 1982).  Factors that seem relevant in this case include the degree of urgency involved and the possibility of danger to police officers guarding the site while a search warrant was sought. See Rubin, 474 F.2d at 268.

The Court notes that there exists an expectation of privacy as to the area surrounding a residence or home.  Chun Yen Chiu, 857 F. Supp. at 359; see Payton v. New York, 445 U.S. 573, 589-90 (1980); Oliver v. United States, 466 U.S. 170, 180 (1984); United States v. Velasquez, 626 F.2d. 314, 316-317 (3d Cir. 1980).  However, police officers were justified in conducting a protective sweep around the outside of the residence at 6-6 Catherine's Rest during which they saw the marijuana plants and firearm in plain view.  The Supreme Court established that officers may conduct a protective sweep when "the searching officer 'possessed a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted the officer in believing' that the area swept harbored an individual posing a danger to the officer or others."  Maryland v. Buie, 494 U.S. 325, 327 (1990); see United States v. Morgan, 2000 U.S. Dist. LEXIS 15905 at *21 (E.D. Pa. Oct. 20, 2000).

Considering the facts that one individual had been shot and another had come running from behind the house, it was reasonable for officers to believe that another person may be located around the residence and may either pose an additional threat or be in need of assistance.  Because the officers' protective sweep of the area outside of the residence was a reasonable means of ensuring that no potentially dangerous and unknown individuals were in the vicinity, the Court finds it permissible under the Fourth Amendment.  Morgan, 2000 U.S. Dist. LEXIS 15905 at 22; see Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971).

9

## V.  MARIJUANA SEIZED FROM AROUND THE RESIDENCE

Police officers observed numerous marijuana plants growing beside and behind the residence located at 6-6 Catherine's Rest.  Defendants argue that the marijuana was seized from the property in violation of their 4th Amendment rights.  Def.'s Mot. to Suppress at 5. Defendants submit that the seizure of the marijuana was without any legal justification.  Id.

### A.   Standard of Review

Items of evidence spotted in plain view may properly be seized, so long as there are exigent circumstances and probable cause exists to believe that the items in question are evidence of a crime or its contraband.  Arizona v. Hicks, 480 U.S. 321, 326 (1987).  Exigent circumstances are present where a suspect is likely to disappear or there is a threat to the safety of officers or the public.  See Warden v. Hayden, 387 U.S. 294 (1967); United States v. Santana, 427 U.S. 38 (1976); Minnesota v. Olson, 495 U.S. 91 (1990); see also United States v. Rubin, 474 F.2d 262, 268 (3d Cir. 1972) (holding that "emergency circumstances will vary from case to case, and the inherent necessities of the situation at the time must be scrutinized").

Even if exigent circumstances do not exist, if police officers are (1) legally in a location, (2) see in plain view evidence whose incriminating character is immediately apparent, and (3) have a lawful right of access to the object, they may seize the evidence and the evidence will be admitted.  See Horton v. California, 496 U.S. 128, 136-37 (1990); Hicks, 480 U.S. 321 (1987); United States v. Menon, 24 F.3d 550, 559 (3d Cir. 1994); United States v. Benish, 5 F.3d 20, 24 (3d Cir. 1993); United States v. Alexander, 73 F. Supp. 2d 489, 491 (E.D. Pa. 1999); United States v. McCoy, 824 F. Supp. 467, 472 (D. Del. 1993).

Writing for a unanimous Court in <u>Soldal v. Cook County</u>, 506 U.S. 56, 66 (1992), Justice

White explained the intimate relationship between the "plain view" doctrine and property

interests protected by the Fourth Amendment.  He stated:

> Suppose, for example, that police officers lawfully enter a house, by either complying
> with the warrant requirement or satisfying one of its recognized exceptions--e.g., through
> a valid consent or a showing of exigent circumstances. If they come across some item in
> plain view and seize it, no invasion of personal privacy has occurred. <u>Horton</u>, 496 U.S., at
> 133-34; <u>Brown</u>, 460 U.S. at 739 (opinion of REHNQUIST, J.). If the boundaries of the
> Fourth Amendment were defined exclusively by rights of privacy, "plain view" seizures
> would not implicate that constitutional provision at all. Yet, far from being automatically
> upheld, "plain view" seizures have been scrupulously subjected to Fourth Amendment
> inquiry. Thus, in the absence of consent or a warrant permitting the seizure of the items in
> question, such seizures can be justified only if they meet the probable cause standard,
> <u>Arizona v. Hicks</u>, 480 U.S. 321, 326-327 (1987), and if they are unaccompanied by
> unlawful trespass. <u>Horton</u>, 496 U.S. at 136-137.  That is because the absence of a privacy
> interest notwithstanding, "[a] seizure of the  article . . . would obviously invade the
> owner's possessory interest." <u>Id</u>. at 134; <u>see also</u> <u>Brown</u>, *supra*, 460 U.S. at 739 (opinion
> of REHNQUIST, J.). The plain view doctrine "merely reflects an application of
> reasonableness to the law governing seizures of property," ibid.; <u>Coolidge v. New
> Hampshire</u>, 403 U.S. 443, 468 (1971); <u>id</u>. at 516, (White, J. concurring and dissenting).

<u>Soldal</u>, 506 U.S. at 66; <u>see</u> <u>United States v. Conley</u>, 856 F. Supp. 1010, 1018-1019 (W.D. Pa.

1994).

**B.   Discussion**

In this case, the Court finds that the police officers satisfied the requirements of the "plain

view" doctrine when they saw the marijuana plants to the side and in back of the residence

located at 6-6  Catherine's Rest.  The police officers took no steps beyond the scope of their

protective sweep to discover the marijuana plants growing around the house.  All of the

marijuana plants were out in the open and in plain view when the officers walked around the

house.  The officers neither moved nor handled any objects in order to locate the plants.

Furthermore, the officers' collective experience made the incriminating nature of the marijuana

plants immediately apparent.  As Officer Gumbs testified at the suppression hearing, he

recognized that the plants were marijuana upon seeing them growing in the back and to the side

of the house.  See Benish, 5 F.3d at 25; United States v. Sculco, 82 F. Supp. 2d 410, 419 (E.D.

Pa. 2000).  Because the marijuana plants were in plain view and the police officers were legally

on the property when they saw such items, the officers had a lawful right of access to such

evidence.  Therefore, the Court finds that the marijuana plants confiscated from around the

residence located at 6-6 Catherine's Rest are admissible under the plain view doctrine.

## VI. SEARCH OF THE RESIDENCE

Defendants argue that the search of the residence located at 6-6 Catherine's Rest was not

legally justified and violated their 4th Amendment rights.  Def.'s Mot. to Suppress at 5.

### A.  **Standard of Review**

The Fourth Amendment generally prohibits the warrantless entry into a person's home,

either to search or to make an arrest.  See Illinois v. Rodriguez, 497 U.S. 177, 181 (1990).

"Freedom from intrusion into the home or dwelling is the archetype of the privacy protection

secured by the Fourth Amendment."  Payton v. New York, 445 U.S. 573, 587 (1979).  To search

a person's home, the police must ordinarily get a warrant based on probable cause. See id. at 586.

Warrantless searches are presumptively unreasonable under the Fourth Amendment. See id.

However, certain circumstances can excuse the warrant requirement, including exigent

circumstances, police safety, and consent to the search by one with the power to give such

consent.  See United States v. Burton, 193 F.R.D. 232, 242-241 (E.D. Pa. 2000); Parkhurst v.

Trapp, 77 F.3d 707, 711 (3d Cir. 1996); Warden v. Hayden, 387 U.S. 294, 298-99, (1967);

Rodriguez, 497 U.S. at 181.

The Fourth Amendment prohibitions "do not apply . . . to situations in which voluntary consent has been obtained, either from the individual whose property is searched . . . or from a third party who possesses common authority over the premises . . . ." Rodriguez, 497 U.S. at 181. One need not waive one's Fourth Amendment rights knowingly or intelligently, but, rather, one need only be acting voluntarily, which is "a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 241 (1973); Sculco, 82 F. Supp. 2d at 420. The Fourth Amendment only gives a citizen the right to be free from unreasonable searches, and not the right to be free from any warrantless search or searches in general. Sculco, 82 F. Supp. 2d at 420. If a defendant freely and voluntary consents to a search, the search is lawful. United States v. Kim, 27 F.3d at 955 (3d Cir. 1994); see also United States v. Kikumura, 918 F.2d 1084, 1093 (3d Cir. 1990) ("a search undertaken pursuant to voluntary consent is not unconstitutional"); Sculco, 82 F. Supp. 2d at 419-420 (holding that it is a clear principal of law that warrantless searches may be conducted where suspect has consented voluntarily).

**B.  Discussion**

The question before the Court is whether Andrea Soto, who came to the door of the residence located at 6-6 Catherine's Rest, permitted officers to search of the premises when she responded to the their question, "Is there anyone else in the house," by stating, "There is no one else in the house except me and my baby. You all could check." See Testimony of Sgt. Gumbs at Suppression Hearing, January 26, 2009. To determine whether voluntary consent was given, the Court must employ an objective, reasonableness, standard. See Rodriguez, 497 U.S. at 186. The question is not whether the Soto actually consented, but, rather whether a reasonable police

officer would have believed that she had.  As the United States Supreme Court in <u>Rodriguez</u>
explained:

> Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability.

<u>Rodriguez</u>, 497 U.S. at 186 (<u>quoting</u> <u>Brinegar v. United States</u>, 338 U.S. 160, 176 (1949)).  All
that the Fourth Amendment requires is that law enforcement officials decide the issue of consent
in a reasonable manner.

Under the totality of the circumstances, the Court finds that the officers were reasonable
in concluding that Soto voluntarily consented to the search of the residence.  The Court finds that
her consent was given intelligently, in the absence of duress or coercion, express or implied, and
was unequivocal, when she stated, "You all could check."  Furthermore, even though the Court
finds that Soto gave her consent to search both knowingly and intelligently, one need only be
acting voluntarily when consent is given.  <u>Schneckloth</u>, 412 U.S. at 241; <u>Sculco</u>, 82 F. Supp. 2d
at 420.  There is no evidence to suggest that Soto's consent was involuntary.  Therefore, the
Court finds that the initial search of the house located at 6-6 Catherine's Rest was justified
because there was voluntary consent to search.


**VII.    SEARCH OF OVERGROWN AREA BEHIND THE PROPERTY**

Police officers recovered numerous items of evidence from the overgrown "bush" area
located behind the property at 6-6 Catherine's Rest.  Defendants argue that the items seized must

be suppressed because the search of the overgrown area was not legally justified and violated

their 4th Amendment rights.  Def.'s Mot. to Suppress at 5.

### A.  Standard of Review

"[N]o expectation of privacy legitimately attaches to open fields."  Oliver v. United

States, 466 U.S. 170, 180 (1984). "[O]pen fields do not provide the setting for those intimate

activities that the [Fourth] Amendment is intended to shelter from government interference or

surveillance. There is no societal interest in protecting the privacy of those activities, such as the

cultivation of crops, that occur in open fields." Id. at 179. Therefore, the Fourth Amendment's

protection of "persons, houses, papers, and effects" from unreasonable searches and seizures

does not apply to open fields and no warrant is required to search an open field.

Under the "open fields" doctrine, any property beyond the curtilage is not afforded

Fourth Amendment protection. Id. at 180. The "curtilage" is described as an area that "harbors

the intimate activity associated with the sanctity of one's home and the privacies of life." United

States v. Dunn, 480 U.S. 294, 300 (1987) (quotation omitted). Whether property is within the

curtilage is a question of fact.  United States v. Benish, 5 F.3d 20, 23-24 (3d Cir. 1993). "[T]he

extent of curtilage is determined by factors that bear upon whether an individual reasonably may

expect that the area in question should be treated as the home itself," including such factors as:

(1) "the proximity of the area claimed to be curtilage to the home";
(2) "whether the area is included within an enclosure surrounding the home";
(3) "the nature of the uses to which the area is put"; and
(4) "the steps taken by the resident to protect the area from observation by people passing
by."

Dunn, 480 U.S. at 300-01.

## B. **Discussion**

The overgrown "bush" area located behind the property at 6-6 Catherine's Rest was a distance away from the home and it was not included within any enclosure surrounding the home. Rather, the overgrown area searched behind the property, from which several items of evidence were recovered, was outside of a barbed wire fence enclosing the residence located at 6-6 Catherine's Rest. See Testimony of Cpl. Abraham at Suppression Hearing, January 26, 2009. Cpl. Abraham testified that there were no other residences in or near the area searched. Because the overgrown area was not used for any residential purposes, it is not an area within which society would reasonably expect the same privacy as within a home. The Court finds that the overgrown "bush" area was not within the curtilage, but rather was an open field. Thus, the officers needed neither reasonable suspicion nor probable cause to search.

As explained above, when an officer does not violate the Fourth Amendment in arriving at the place from which the evidence can be plainly viewed and the evidence's incriminating character is immediately apparent, warrantless search or seizure does not offend the Fourth Amendment under the "plain view" doctrine. Because the open fields doctrine applied, the officer's presence and search of the overgrown area behind the property located at 6-6 Catherine's Rest did not violate Defendants' Fourth Amendment rights. Once the officers saw the firearms in the area searched, the seizure was proper under the open fields and plain view doctrines.

## VIII.   CONCLUSION

The Court finds that the initial stop of the vehicle occupied by Defendants Amon Thomas

and Okimo Meligan was justified based on reasonable suspicion.  <u>See</u> <u>Terry</u>, 392 U.S. at 30.  The

Motion to Suppress is denied as to the seizure of the marijuana plants growing beside and in

back of the residence located at 6-6 Catherine's Rest because the officers did not violate

Defendants' Fourth Amendment rights in conducting a protective sweep around the residence

and the seizure of the marijuana plants was proper under the plain view doctrine.  The Motion to

Suppress is denied as to the evidence seized during the search of the residence itself because the

officers obtained voluntary consent to search the house.  Finally, the Motion to Suppress is

denied as to the items of evidence obtained from the overgrown area in back of the property

located at 6-6 Catherine's Rest because the area searched fell within the definition of an open

field.  For the reasons stated herein, Defendants' Motion to Suppress is **DENIED**.


**ENTERED this 18th day of February, 2009.**


_____/s/_____
**HONORABLE RAYMOND L. FINCH**
**SENIOR U.S. DISTRICT JUDGE**

.